# COURT OF APPEALS OF VIRGINIA

## Record No. 2006-25-3

ZHAN WANG, NP
v.
LAURA TAYLOR, ET AL.

Before: Judges Chaney, Callins and Bernhard

Opinion Issued July 7, 2026[*]

### FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

(Thomas E. Strelka; Virginia Employment Law, on brief), for appellant.

(Kimberly W. Daniel; Jonathan M. Sumrell; Hancock, Daniel & Johnson, LLC, on brief), for appellee Laura Taylor.

(Agnis Chakravorty; Elaine D. McCafferty; Woods Rogers Vandeventer Black PLC, on brief), for appellees Carilion New River Valley Medical Center and Carilion Clinic.

### MEMORANDUM OPINION BY
### JUDGE DAVID BERNHARD

Zhan Wang appeals the circuit court's judgment sustaining demurrers by Laura Taylor, Carilion New River Valley Medical Center, and Carilion Clinic to her defamation claims. The court concluded that the allegedly defamatory statements lacked the requisite "sting" to be actionable as defamation. The court also concluded that Taylor and the Carilion parties were entitled to immunity under Code § 54.1-2400.6(C), Code § 8.01-223.2(A)(i), and the common law qualified privilege. We affirm the judgment because the statements are not actionable.[1]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." Code § 17.1-403(ii)(c); Rule 5A:27(c).

BACKGROUND

"Because this appeal arises from the grant of a demurrer, we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). "But we are not bound by the pleader's conclusions of law that are couched as facts." *Theologis v. Weiler*, 76 Va. App. 596, 600 (2023).

Wang is a licensed nurse practitioner who worked in a psychiatric clinical practice at Carilion New River Valley Medical Center in Christiansburg, Virginia, beginning in August 2019.[2] Taylor is the Director of Radford Psychiatry, a department of Carilion.

Taylor and Wang had a contentious relationship. In September 2022, Taylor asked Wang to sign a noncompete agreement, Wang refused, and the refusal "angered" Taylor. Wang observed and reported "multiple patient care issues directly to Director Taylor in 2022 and 2023." Taylor generally took no action on Wang's reports; rather, she became "frustrated and then outright hostile" to Wang. Wang observed what she believed to be unlawful or inappropriate behavior, including another nurse practitioner prescribing medication outside the scope of his medical license. Wang reported this to Taylor, who "became angered by this report."

Wang reported "her concerns of unlawful practices at Carilion" to an authority at the Virginia Board of Nursing. The authority "convened a meeting with Director Taylor and Carilion Compliance in January of 2023 to investigate and follow-up on . . . Wang's report." Taylor became further "angered" by that meeting, directed Wang to "stay out of it," and then took no further action on the issue.

---

[2] The facility is also referred to as Carilion Roanoke Memorial Hospital. Carilion Clinic is a non-profit healthcare corporation sharing the same leadership and executives as the medical center. We refer to Carilion Clinic and the medical facility collectively as "Carilion."

Wang submitted a 90-day resignation notice to Taylor by email on April 16, 2023, because she "could no longer work under the management of Director Taylor." At a May 5, 2023 meeting, Taylor and Wang discussed Wang's resignation, and Taylor also asserted that "Wang had a conflict of interest between her own clinic and Carilion." Wang asserted that no conflict exists "and Carilion had approved of her work." According to Wang, she "had successfully grown her practice and this angered . . . Taylor further as . . . Wang had refused to sign the non-compete agreement in the prior year."

In August 2023, Taylor filed a report to the Virginia Department of Health Professions under Code § 54.1-2400.6. In the report, Taylor stated, "On May 5, 2023, Ms. Wang submitted her resignation while under investigation for violating policies, rules, guidelines, or practices related to safe patient care." *See* Code § 54.1-2400.6(A)(6). She also described a series of events "leading up to" the report. She asserted that another nurse practitioner, Robert "Seth" Losey, had reported concerns to her on April 13, 2023, that Wang may have examined a staff member off record, prescribed a controlled substance to this staff member, and solicited patients for her private practice outside of Carilion. Taylor also stated in the report that she had met with Wang on April 13, 2023, to discuss the concerns and that Wang admitted during that meeting that she had met with a staff member while working at Carilion and prescribed him a controlled substance "via her private practice while on shift at Carilion."

The report also described a meeting on May 5, 2023, between Wang, Taylor, a "compliance specialist" and a senior human resources consultant. During the meeting (according to the report), Wang again admitted to prescribing medication to the staff member and further admitted to giving out business cards to employees "to gain patients at her private practice." Finally, the report, dated July 27, 2023, but received by the Department of Health Professions on August 7, 2023, notes that Carilion completed an investigation into Wang's conduct on May 24,

2023, and that "a disciplinary action for violating policies, guidelines, rules, regulations, or practices related to safety or the provision of safe patient care" was sent to Wang on June 27, 2023, via certified mail.

Wang sued Taylor and Carilion for defamation per se based on three aspects of two statements in Taylor's report.[3]  The statements are:

- "On April 13, 2023, I met with Ms. Wang to discuss the concerns raised by Mr. Losey."

- "On May 5, 2023, Ms. Wang submitted her resignation while under investigation for violating policies, rules, guidelines, or practices related to safe patient care."

Wang denied meeting with Taylor on April 13, 2023.  Wang alleged that the May 5 statement is false and defamatory in two ways: because she was not under investigation when she resigned, and because she submitted her resignation on April 16, 2023, not May 5, 2023.  According to Wang, when she resigned, she had not been informed by anyone at Carilion that she was under investigation or subject to disciplinary proceedings.

Wang asserted that these statements prejudiced her in her trade or profession and imputed to her an unfitness to perform her duties as a nurse practitioner.  She further alleged that Taylor filed the report out of malice, to retaliate against Wang, and that Taylor intentionally made knowingly false statements about Wang to harm her reputation and professional license.

Taylor and Carilion demurred, arguing that (1) the statements lacked the requisite defamatory "sting" to be actionable; (2) they were entitled to statutory immunity under Code § 54.1-2400.6(C) because Wang failed to allege that Taylor made the statements in bad faith or with malicious intent; (3) they were entitled to statutory immunity under Code

---

[3] Taylor and Carilion demurred to Wang's initial complaint, and the circuit court sustained it with leave to amend.  The court also ordered that Taylor's report be made part of the amended complaint.

§ 8.01-223.2(A)(i) because the statements in the report related to matters of public concern protected under the First Amendment to the United States Constitution; and (4) they were entitled to common law qualified privilege because the statements were made while carrying out their duties as mandatory reporters. They additionally argued that the May 5 statement was not actionable because it was not false, under the allegations of the complaint.

The circuit court sustained the demurrer, concluding that none of the statements carried the requisite "sting" to be actionable as defamation and that the defendants were entitled to immunity under Code § 54.1-2400.6(C), Code § 8.01-223.2(A)(i), and the common law qualified privilege. Wang appealed.

ANALYSIS

"We exercise de novo review of the circuit court's decision sustaining the defendants' demurrers." *Theologis*, 76 Va. App. at 603. "The purpose of a demurrer is to determine whether the pleading and any proper attachments state a cause of action upon which relief can be given." *Young-Allen v. Bank of Am.*, 298 Va. 462, 467 (2020) (quoting *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012)). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022) (quoting *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 216 (2017)). Thus, "[a] circuit court 'is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a . . . complaint.'" *Id.* (second alteration in original) (quoting *Riverview Farm Assocs. Va. Gen. P'ship v. Bd. of Supervisors*, 259 Va. 419, 427 (2000)). "In deciding whether to sustain a demurrer, the sole question before the trial court [and before this Court on appeal] is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against a defendant." *Pendleton v. Newsome*, 290 Va. 162, 171 (2015).

To state a claim for defamation, a plaintiff must allege "(1) publication of (2) an actionable statement with (3) the requisite intent" by the defendant. *Schaecher v. Bouffault*, 290 Va. 83, 91 (2015) (quoting *Tharpe v. Saunders*, 285 Va. 476, 480 (2013)). To be actionable, a statement must be (1) factual, rather than one of opinion; (2) defamatory; and (3) false. *See id.*; *Handberg v. Goldberg*, 297 Va. 660, 666-68 (2019). Whether a statement meets the first two aspects of an actionable statement are questions of law, to be decided by courts in a "gatekeeping function" in defamation actions. *Schaecher*, 290 Va. at 94; *see Handberg*, 297 Va. at 667; *Theologis*, 76 Va. App. at 605. By contrast, "the determination whether an allegedly defamatory statement is false ordinarily presents a factual question to be resolved by a jury." *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 48 (2009).

To meet the second requirement—i.e., to be sufficiently defamatory to be actionable—the statement must have "the requisite defamatory 'sting' to one's reputation." *Handberg*, 297 Va. at 667 (quoting *Schaecher*, 290 Va. at 92). A statement has defamatory "sting" if it "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or . . . tends to hold him up to scorn, ridicule, or contempt, or . . . is calculated to render him infamous, odious, or ridiculous." *Id.* at 668 (quoting *Schaecher*, 290 Va. at 92). But language that "constitutes no more than 'rhetorical hyperbole' is not defamatory," even if it may be "insulting, offensive, or otherwise inappropriate." *Theologis*, 76 Va. App. at 606 (quoting *Schaecher*, 290 Va. at 92).

At common law, certain aspersions are defamatory per se, including those "which impute to a person unfitness to perform the duties of an office or employment of profit" and those "which prejudice [a] person in his or her profession or trade." *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713 (2006) (quoting *Fleming v. Moore*, 221 Va. 884, 889 (1981)). "A person maligned by defamation per se may recover compensatory damages for injury to reputation,

- 6 -

humiliation, and embarrassment without demonstrating any financial loss." *Id.* at 713-14. Wang asserts that Taylor's statements are defamatory per se because they prejudice her in her profession as a nurse practitioner and impute to her unfitness to perform the duties of that profession.

We must examine statements "in context" to determine "whether they are reasonably capable of defamatory meaning." *Schaecher*, 290 Va. at 93. "[C]ontext is of the utmost importance." *Id.* at 101. We also must consider "the audience" of the statement. *Id.* at 104.

According to Wang, it was defamatory for Taylor to falsely claim that Wang resigned while under investigation because that assertion implies that she conceded culpability in the matter being investigated. Yet Wang does not claim that Taylor's allegations about *her underlying conduct* are false. Wang does not challenge the truth of the statement in the report that on May 5, 2023, Wang met with Taylor and two other Carilion employees and admitted to conduct of which she was accused, including prescribing medication to a staff member "without seeing him in an official capacity." Nor does she challenge the truth of the statement in the report that Carilion ultimately "completed [an] investigation" and sent her a disciplinary action. Thus, even taking as true Wang's assertions that she was not under investigation when she resigned, she does not dispute that an investigation occurred, nor does she dispute the statements Taylor made about her behavior that led to the investigation. Given that context, the timing of Wang's resignation carries diminished significance, and none of the challenged statements are "sufficiently damaging to [her] reputation so as to deter others from associating with her and render her contemptible in the estimation of the community." *Schaecher*, 290 Va. at 102.

For the same reasons, the statements do not prejudice her in her profession as a nurse practitioner, nor impute to her unfitness to perform the duties of that profession. *See Tronfeld*, 272 Va. at 713. Taken as a whole, the impact of Taylor's report on Wang's professional

reputation is negative, surely. It accuses her of "violating policies, guidelines, rules, regulations, or practices related to safety or the provision of safe patient care." But the specific challenged statements about the timing of her resignation do not have a significant impact when examined against the greater backdrop of the allegations in Taylor's report, which Wang does not otherwise challenge. Thus, the circuit court correctly concluded that the allegedly defamatory statements lack the requisite sting to be actionable. *See Schaecher*, 290 Va. at 95-98. Because we may affirm the circuit court's judgment sustaining the demurrer on this ground alone, we do not consider whether the appellees were entitled to immunity under Code § 54.1-2400.6(C), Code § 8.01-223.2(A)(i), or the common law qualified privilege. *See Theologis*, 76 Va. App. at 603 ("We have an 'obligation to decide cases on the best and narrowest grounds available.'" (quoting *Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022))).

CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*